UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE CORONADO, | § § § § | |
| Plaintiff, | § | |
| v. | § § | CIVIL ACTION NO. H-08-cv-0864 |
| FREEMAN DECORATING SERVICES, INC., AND INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADERS, | § § § § § § | |
| Defendants. | § | |

MEMORANDUM AND ORDER

Before the Court are two Motions for Summary Judgment filed by Defendants Freeman Decorating Services, Inc. ("Freeman") and International Union of Painters and Allied Traders' ("the Union"). (Doc. Nos. 17-18.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that the Motions should be granted.

I.   BACKGROUND

Plaintiff joined the International Union of Painters and Allied Trades District Council 88, Local Union 550 ("Local 550") in 1986 or 1987. (Coronado Dep. 11:23, Feb. 6, 2009.)[1] In 1988, Plaintiff began working for Freeman. (*Id.* at 14:15.) Freeman sells services and products related to the convention and trade show industry. Plaintiff worked part-time for Freeman and would report to work when the Union called him to tell him Freeman needed a worker. (*Id.* at 15:7-15.) The Union's relationship with Freeman is governed by The Houston Area Collective Bargaining Agreement ("CBA"). (Doc. No. 18, Ex. B.) In 1994, Plaintiff had a physical

---

[1] For the purposes of this Motion only, the facts are presented in the light most favorable to Plaintiff.

1

altercation with his Freeman operations manager and was assigned to work at Freeman's show site instead of at the warehouse. (Coronado Dep. 16-17.) Other than this transfer, Plaintiff worked continuously at Freeman from 1988 until he was terminated in July 2007. (*Id.* at 15:4-6.)

While at Freeman, Plaintiff's duties included taking care of aisle carpet and supervising the warehouse. Plaintiff would also go to show sites to ensure that both the booth and aisle carpet were laid. (*Id.* at 19:16-19.) In 1994, Plaintiff began reselling the Freeman carpet. According to Freeman's company standards, some types of carpet, like Freeman's Prestige brand, cannot be used for multiple events. (*Id.* at 22:17-25.) Plaintiff, who also works as a carpet layer, would buy the carpet from Freeman to use in side jobs or to sell to different carpet layers. (*Id.* at 23:1-15.) Freeman's operations manager would set the price of the carpet, and then Plaintiff would resell it at a markup of approximately fifty cents or a dollar per yard. (*Id.* at 23:24-24:3.)

Initially, if Plaintiff wished to purchase carpet, he would speak with his operations manager, Dennis Pena. Plaintiff would pay Pena and receive a receipt for the carpet. Plaintiff would purchase the carpet at Freeman's warehouse and then load it in his truck. (*Id.* at 26-27.) In 2004 or 2005, Madolyn Murdock joined Freeman as the General Manager and changed the process for employees purchasing excess carpet. (*Id.* at 28:11-14.) Murdock required that employees have an assistant operations manager sign off on the receipts. Before signing off on the receipt, the assistant operations manager would inspect the carpet and verify that the amount of carpet Plaintiff had loaded on the trailer was the amount reflected on the receipt. (*Id.*) After the assistant operations manager signed off on the receipt, Plaintiff would then have to pay Janet Starns, an accounting employee. (*Id.* at 28-29.) Plaintiff contends that he always followed this procedure, but that Stefan Schroeder, the assistant operations manager, did not always inspect the

carpet before he signed off on the receipts. (*Id.* at 29:21-24.) Plaintiff also deviated from this procedure by paying for his purchases on a monthly basis instead of at the time he took the carpet. Plaintiff kept his own records of how much carpet he had taken in a particular month. (*Id.* at 41:1-17.)

In May 2007, Plaintiff purchased some carpet from Freeman. (*Id.* at 43:3.) Because Murdock had told Plaintiff that he could no longer sell carpet directly from Freeman's Almeda location, Plaintiff instructed some other employees to load the carpet onto a trailer owned by Freeman. (*Id.* at 47:1-48:20.) Plaintiff told the employees which carpet bins to load. He was not present, however, the entire time these employees were loading the trailer, and he did not inspect the trailer before it was locked. He did not show these employees a receipt for the carpet. (*Id.* at 91:2-18.) Plaintiff believes that these employees made a mistake in loading the trailer, which accounts for the discrepancy between the amount of carpet in the trailer and the amount he purchased. (*Id.* at 92:20-23.) After the trailer was loaded, Plaintiff instructed a Freeman driver to take the trailer to Freeman's Calvacade location and park it there. (*Id.* at 47:22-48:18.) On June 5, 2007, the Plaintiff paid $2254.00 for the carpet. (*Id.* at 43:16; Pl. Compl. ¶ 9.)

On July 23, 2007, Murdock confronted Plaintiff about the trailer parked at the Calvacade location. Schroeder and Murdock requested the keys to Plaintiff's lock, but he refused to give the keys to them. Instead, he went with them to the trailer. (Coronado Dep. 49:1-20.) Plaintiff went to the trailer, but he says that Murdock never showed up. Instead, Kevin O'Brien met Plaintiff, and together they unlocked the trailer. Murdock sent other employees out to count the carpet, and because the employees did not know how to measure carpet, Plaintiff got upset and left. (*Id.* at 50-51.) The carpet was then taken to Freeman's Westview location and counted. (*Id.* at 58:13-14.)

Plaintiff was then called to a meeting and told that Freeman had a zero tolerance policy for theft and that he was terminated. (Coronado Dep. 53:3-11.) The CBA provides that Freeman may discharge an employee for stealing. (Doc. No. 18, Ex. B at 11.) At his termination meeting, Plaintiff informed Murdock that he was not present when the trailer was loaded. (Coronado Dep. 93:8-10.) When asked about the carpet, Plaintiff showed Murdock two invoices, one dated May and one dated March. (*Id.* at 98:21-99:2.) Plaintiff later spoke with Murdock and Hutchins, in an effort to get his job back, and offered to pay them for the additional amount he owed, but they declined. (*Id.* at 53:21-24.) At the time Plaintiff was terminated from Freeman, he was making $23.50 per hour. (*Id.* at 19:6.)

After his termination, Plaintiff contacted Susan Walker at Local 550 and told her what had happened. (*Id.* at 61:11-15.) Susan Walker told Plaintiff that the Union was going to "look into" what happened, but he does not know if anyone ever actually investigated the claim. (*Id.* at 103:3-11.) The Local 550 completed a Grievance Form, dated July 26, 2007, in which Plaintiff stated he believed he had been unfairly terminated. Plaintiff sought to be reinstated at Freeman. (Doc. No. 18, Ex. E.) Plaintiff wrote to Local 550 on August 6, 2007, and described his version of the events surrounding the alleged theft. Plaintiff concluded by stating that he wanted to express his point of view on the situation and rejoin the Freeman family. (Doc. No. 18, Ex. D.) Plaintiff does not know if anyone from the Local 550 contacted any of his coworkers about the events leading to his termination. (Coronado Dep. 102:7-10.) Plaintiff admits, however, that he has no way of knowing if either Susan Walker, or Local 550, contacted anyone about the incident. (*Id.* at 105:9-14.) On August 9, 2007, the Executive Board of Local 550 met to consider Plaintiff's grievance. The Board concluded that Plaintiff's claim lacked merit and that the evidence he presented was insufficient and lacked a basis for defense. The Board concluded

that both Plaintiff and Freeman had agreed on procedures for purchasing carpet, but that they were not followed. The Board also determined that Freeman had made every effort to retain Plaintiff, but that the evidence against him was "overwhelming." The Board declined to go forward with filing a formal grievance. (Doc. No. 18, Ex. E-7.) On August 14, 2007, Local 550 notified Plaintiff, via letter, that it was declining to pursue a formal grievance hearing on his behalf because the claim lacked merit and because Freeman had made every effort to retain his employment. The letter informed him that he could pursue his complaint further by filing with the District Council office in Georgetown, Texas or the International Office in Washington, D.C. (Doc. No. 18, Ex. G.) Walker also called Plaintiff to inform him that the Executive Board had denied his request. (*Id.* at 63:18-19.) On August 23, 2007, Brad Hutchins, Director of Operations for Freeman, wrote to Local 550 to inform them that, as of July 23, 2007, Plaintiff would no longer be accepted on any Freeman labor call. The letter described Plaintiff's alleged theft of the carpet, and concluded that Plaintiff was no longer eligible to work at any Freeman locations. (Doc. No. 18, Ex. C.)[2]

On August 22, 2007, Plaintiff sent a fax to Jeff Dovernecki of the District Council, informing him that he wanted to file a grievance and the Local 550 was "not able to help [him]" in the matter. (Doc. No. 18, Ex. H.) According to Plaintiff, Jeff Dobernecki had a meeting with Murdock and then decided he could not help Plaintiff. (Coronado Dep. 68:1-6.) On November 12, 2007, the District Council responded to Plaintiff's request in writing. The District Council informed him that it had reviewed all the evidence pertaining to his termination and it believed the Board's decision should stand. (Doc. No. 18, Ex. I.) The letter did not inform Plaintiff that he could further appeal the decision to the International Office. Plaintiff admits that he did not

---

[2] The Court suspects that this letter, which was dated August 23, 2007, was actually sent on July 23, 2007. Because Defendants do not advance this argument, and because the Court must consider all facts in the light most favorable to Plaintiff, the Court will assume the letter was sent on August 23.

5

seek help from the International Office, because Jeff Dobernecki never told him to go to the International Office. (*Id.* at 71:1-15.) Plaintiff contends that he believed that Dobernecki worked for the International Office. (*Id.* at 16-17.)

After Plaintiff was terminated from Freeman, he alleges that the Union no longer called him with job opportunities. (*Id.* at 74:22-75:2.) Plaintiff currently works part-time for George Fern. (*Id.* at 77:10-11.) Plaintiff admits that he got his job at George Fern because the Union called him and asked him to go work there, about six months after his termination. (*Id.* at 78:1-9.) Plaintiff currently makes $21.02 per hour. (*Id.* at 90:5-6.)

The Union never asked Plaintiff to appear in front of a committee, but he would have done so if asked. No one from the Union accompanied Plaintiff when he tried to get his job back. According to Plaintiff, the Union showed him very little paperwork indicating what it did on his behalf to investigate the case. Plaintiff says that the only evidence the Union had from him as to the events was his letter dated August 6, 2007. Plaintiff says he does not know whether the Union received any evidence from Freeman. (Doc. No. 20, Ex. B ¶ 6.)

Plaintiff filed suit on March 18, 2008, alleging that Freeman violated the terms of the CBA. Specifically, Plaintiff argues that Freeman terminated him without just cause and did so in violation of the protections against termination contained in the CBA. Plaintiff avers that the Union breached its duty of fair representation because it failed to conduct a meaningful investigation on Plaintiff's behalf, and because Plaintiff was unable to arbitrate his grievance because the Union never made an arbitration request. Plaintiff further alleges that the Union's failures were arbitrary, discriminatory and/or conducted in bad faith such that the Union undermined the fairness or integrity of the grievance process.

Plaintiff represents that he has experienced a dramatic loss in wages and overtime pay, loss of health care and retirement benefits and the indignity of being accused of a theft he never intended or committed. He requests both liquidated and exemplary damages and asks the Court to exercise its equity powers to provide Plaintiff with all relief necessary, including expunging all documents contained in Freeman's files that refer to his "unjust termination" and an order that requires Freeman to disavow such reasons in a written notice posted at its facilities for thirty days. The Court has jurisdiction of the case pursuant to 28 U.S.C. § 1331.

## II. STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 requires the Court to determine whether the moving party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R. CIV. P. 56(c). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Id.* Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. F.R.C.P. 56(e)(1); *See, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996), *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied

with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III. ANALYSIS

Plaintiff alleges a hybrid claim against both Defendants pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Hybrid actions are composed of two elements: (1) an allegation that the employer breached the collective bargaining agreement; and (2) an allegation that the union breached its duty of fair representation. *Gibson v. U.S. Postal Serv.*, 380 F.3d 886, 888 (5th Cir. 2004). A fair representation claim against the union is an indispensable predicate for a section 301 claim against an employer. *Daigle v. Gulf States Utilities Co., Local Union No. 2286*, 794 F.2d 974, 979 (5th Cir. 1986). Therefore, before the merits of any breach of contract claim against an employer can be addressed, the plaintiff must first demonstrate the union breached its duty of fair representation. *United Parcel Serv. Inc. v. Mitchell*, 451 U.S. 56, 62 (1981).

Defendants make two threshold arguments in an attempt to defeat Plaintiff's duty of fair representation claim. First, they argue that Plaintiff's claim is barred by the six-month statute of limitations the Supreme Court imposed on such "hybrid claims" in *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-165 (1983). Second, Defendants contend that Plaintiff's claim is not ripe for adjudication because he failed to exhaust his administered remedies, as required by *Vaca v. Sipes*, 386 U.S. 171, 184 (1967).

### A. Statute of Limitations

Defendants contend that Plaintiff's claim is barred by the statute of limitations. Hybrid claims brought pursuant to section 301 are subject to a six-month statute of limitations. *DelCostello*, 462 U.S. at 169. When a union decides not to file a grievance, the cause of action

generally accrues when the employee learns or should have learned of the union's decision. *Galindo v. Stoody Company*, 793 F.2d 1502, 1509 (9th Cir. 1986) (citations omitted). Other circuits have held, however, that the statute of limitations is tolled by the plaintiff's pursuit of internal union remedies, even when those remedies are ultimately determined to be futile. *Frandsen v. Bhd. of Ry., Airline & S.S. Clerks*, 782 F.2d 674, 681 (7th Cir. 1986); *Adkins v. Int'l Union of Elec. Radio & Machine Workers*, 769 F.2d 330, 336 (6th Cir. 1985). In *Lee v. Cytec Industries, Inc.*, the Fifth Circuit recognized the rationale behind the rule is that "because some plaintiffs must exhaust internal contractual remedies (e.g. the grievance process) before suing, it would be unfair to say that the plaintiff's claim is barred by limitations if, while the grievance is pending, the six month federal statute of limitations expires." 460 F.3d 673, 676 (5th Cir. 2006). The Court of Appeals adopted the rule that, to invoke this equitable tolling, an employee must file a grievance with the union within six months of the discovery of the breach of the duty of fair representation. *Id.*

In the instant case, Plaintiff was terminated on July 23, 2007. He filed a grievance form with the Union on July 26, 2007. Local 550 notified Plaintiff that it would not pursue his grievance on August 14, 2007. On August 22, 2007, Plaintiff sent a fax to Jeff Dovernecki of the District Council, informing him that he wanted to file a grievance and the Local 550 was "not able to help [him]" in the matter. The statue of limitations was therefore tolled until November 12, 2007, when the District Council informed Plaintiff that the Executive Board's decision would stand and it would not pursue his grievance. Plaintiff timely filed suit on March 18, 2008.

### B. Exhaustion

Defendants argue that Plaintiff's claim is barred because he failed to exhaust his administrative remedies under the Union's rules. In support of its argument, Defendants cite

*Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652 (1965), which held that an employee must at least attempt to exhaust exclusive grievance and arbitration procedures established in the bargaining agreement. Specifically, Plaintiff argues that, by failing to appeal the denial of his grievance to the Union's International Office, Plaintiff did not exhaust his administrative remedies.

There are, however, several exceptions to the rule that the plaintiff must exhaust his remedies under the bargaining agreement before filing suit. Requiring a plaintiff to exhaust the bargaining agreement's administrative remedies "works an unacceptable injustice when the union representing the employee in the grievance/arbitration procedure acts in such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *DelCostello,* 462 U.S. at 165. In such an instance, an employee may bring suit against both the union and the employer, notwithstanding the outcome or finality of the grievance or arbitration proceeding. *Id.* (citations omitted).

Because Plaintiff alleges a hybrid claim, he was not obligated to exhaust the administrative procedure available in the CBA. Defendants also allege, however, that Plaintiff failed to exhaust the Union's internal administrative remedies. Union members, before bringing suit against their employer and union under section 301, ordinarily are required to exhaust whatever private remedies are available to address their grievances, including intra-union remedies. *Clayton v. UAW,* 451 U.S. 679, 685 (1981). Local 550's Working Rules and Bylaws ("the Local 550 Bylaws") provide that "No ... member ... shall resort to any court or agency outside the International until all forms of relief and avenues of appeal, as provided by the International Constitution, have been exhausted, unless otherwise provided by statutory law."

(Doc. No. 18, Ex. J at 16.) The District Council's Working Rules and Bylaws ("the District Council Bylaws") provide that:

> Every member, by virtue of the member's membership in a Local union affiliated with the District Council, authorizes the District Council to act as his or her exclusive bargaining representative with full and exclusive power to execute agreements with the members' employer governing the terms and conditions of employment and to act for the member and have final authority in representing, processing and adjusting any grievance, difficulty or dispute arising under any collective bargaining agreement, or out of his or her employment with such employer in such manner as it deems within its discretion to be in the best interests of the District Council. The District Council Officers, Business Representatives and agents may decline to process any grievance, complaint or dispute if, in their sole discretion and judgment, such grievance, complaint or dispute lacks merit.

(Doc. No. 17, Ex. 3 at Art. XVI, § 16.3.) Sections 301-302 of the Union's International Constitution allows aggrieved members to appeal the decision of the District Council within thirty days of issuance. (Doc. No. 26, Ex. 1.) Plaintiff timely appealed Local 550's decision to the District Council, but he admits that he failed to appeal the District Council's decision to the International Office before filing suit.

Courts have discretion in deciding whether to require exhaustion of internal union procedures. *Clayton*, 451 U.S. at 689. "In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedures would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks under § 301; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust." *Id.* Plaintiff does not allege, and the record does not reflect, that the Union's employees were so hostile to Plaintiff that he could not expect a fair hearing on his claim. Plaintiff had conversations with both Susan Walker and Jeff Dovernecki; he does not allege that

11

they, or any other union members, treated him with disrespect or indicated that his grievance was futile. Nor does Plaintiff allege that appealing the decision to the International Union would fail to reactivate his grievance or give him the full relief he sought, or that it would create unreasonable delay in his effort to have a judicial hearing on the merits of his grievance.

Plaintiff does argue that Local 550's handling of his grievance was untimely because Local 550 did not tender his grievance to Freeman, as required by the CBA. As will be discussed below, Plaintiff provides no evidence to support this assertion. Plaintiff also argues that he should be excused from the exhaustion requirement because the District Council failed to inform him of his right to appeal to the International Office, and because he believed that Jeff Dovernecki actually worked for the International Office. As Defendants point out, Plaintiff's fax to the District Council dated August 22, 2007, states that he had been informed that he could appeal to both the District Council and the International Office.

Even if the Court takes as true that Plaintiff was unaware of his additional right to appeal, this does not excuse his failure to exhaust his remedies. As the Seventh Circuit has recently held, the general rule is that ignorance of one's internal union remedies does not excuse the failure to pursue such remedies before bringing suit. *Bell v. DaimlerChrysler Corp.*, 547 F.3d 796, 807 (7th Cir. 2008) (citations omitted). "Union members have an obligation of diligence in ascertaining what avenues of relief are available to them with the union." *Id.* at 807-808 (citations omitted). Plaintiff failed to familiarize himself with the appeals process and his rights under the International Constitution. The Court therefore finds that Plaintiff failed to exhaust his internal union remedies.[3]

### C. Duty of Fair Representation

---

[3] Because Plaintiff failed to appeal the District Council's decision within thirty days, his claim is now barred from further internal review by the Union.

Even if Plaintiff had exhausted his administrative remedies, the Court finds that he has not presented sufficient evidence to support a duty of fair representation claim. A union has a duty to represent all employees fairly in its enforcement of a collective bargaining agreement. *Landry v. The Cooper/T.Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir. 1989). Thus, the union has an obligation to investigate a grievance in good faith. *Id.* at 852. To prove a breach of this duty, the plaintiff must show that the union has (1) acted in a hostile manner towards his interests; (2) discriminated against him in some fundamental respect; (3) exercised its discretion in a bad faith or dishonest manner; or (4) acted arbitrarily or capriciously while representing him. *Vaca*, 386 U.S. at 177. The plaintiff must demonstrate that the union's behavior was "arbitrary, discriminatory, or in bad faith." *Grovner v. Georgia-Pacific Corp.*, 625 F.2d 1289, 1290 (5th Cir. 1980) (internal citation omitted).

The union's actions are considered arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness as to be irrational." *Air Line Pilot's Ass'n, Intern. v. O'Neill*, 499 U.S. 65, 67 (1991).

> A union does not breach [this] duty ... through simple negligence or a mistake in judgment. We have upheld a determination that a union did not breach its duty when its conduct in processing an employee's grievance was less than enthusiastic and not perfect. The critical question is whether a union's conduct was arbitrary, discriminatory, or in bad faith, so that it undermined the fairness or the integrity of the grievance process.

*Moore v. Potter*, 275 Fed.Appx. 405, 409 (5th Cir. 2008) (citing *Landry*, 880 F.2d at 852 (international citations and quotations omitted)). The district court should review the union's decision with deference. Significantly, an employee has no absolute right to have his grievance taken to arbitration or to any other level of grievance process. *Landry*, 880 F.2d at 852.

Plaintiff alleges that the Union breached its duty of fair representation to properly investigate his grievance complaint and to act on his grievance complaint in a timely manner. As to the sufficiency of the Union's investigation, Plaintiff argues that, in its letter notifying him that it was declining to pursue the grievance, Local 550 neglected to specify what action it took to pursue the grievance on Plaintiff's behalf or why Plaintiff's grievance lacked merit. Plaintiff further takes issue with the letter's statement that Freeman took all steps to retain his employment—Plaintiff contends that Freeman did not take any steps to retain his employment. Second, Plaintiff asserts that the only evidence the Board considered related to the incident was Plaintiff's letter dated August 14, 2007. Plaintiff states that he is unaware if Local 550 contacted any of his co-workers about the incident or if it considered any evidence from Freeman relating to the incident. Finally, Plaintiff claims that the International Office failed to contact him about his claim.

Even considering the evidence in the light most favorable to Plaintiff, the Court finds that these conclusory statements alone are insufficient. Plaintiff's own testimony indicates that he spoke with Susan Walker at the Local 550 about his termination, and that she informed him that they would "look into it." Plaintiff admits that he has no personal knowledge as to whether Local 550 actually failed to investigate his claims following this conversation. Furthermore, Plaintiff contends that the Board did not provide any reasoning as to its decision that it would not pursue his grievance. Defendants have presented evidence to the contrary—the Board informed Plaintiff that it declined to pursue his grievance because "Plaintiff and Freeman had agreed on procedures for purchasing carpet, but that they were not followed." Finally, as to Plaintiff's allegation that the Union never contacted Freeman about the incident, Plaintiff himself testified that Jeff Dovernecki had a meeting with Murdock before determining that the Local 550's

decision should be upheld. Plaintiff fails to prove that the union neglected to contact other Freeman employees. Instead, he only acknowledges that he lacks personal knowledge as to whether these conversations took place. Absent such evidence, the Court cannot conclude that the Union's handling of Plaintiff's grievance was arbitrary, discriminatory, or in bad faith. *See Herbert v. General Truck Drivers, Chauffers, Warehousemen and Helpers, Local 270*, No. Civ. A. 03-1744, 2004 WL 1597144, at *14 (E.D.La. July 16, 2004) (citing *Bache v. American Telephone and Telegram*, 840 F.2d 283, 292 (5th Cir. 1988)); *cf. Abilene Sheet Metal, Inc. v. National Labor Relations Board*, 619 F.2d 332, 347-348 (5th Cir. 1980) (holding that union breached its duty of fair representation by failing to investigate when plaintiff presented union meeting minutes that indicated the union declined to investigate plaintiff's claims because he was not a member of the union.)

Plaintiff also argues that the Union breached its duty of fair representation by handling his grievance in an untimely manner. Plaintiff predicates his argument on the following language from the Collective Bargaining Agreement:

> In many [sic] cases of discharge or suspension which the Union wishes to contest, the Union must, within five (5) working days, (excluding Saturdays, Sunday and Holidays), after such discharge or suspension, notify [sic] grievance the Company in writing and its desire to meet with the Company .... [I]f the Company and the Union failed to agree within two working days (excluding Saturdays, Sundays, and Holidays), the selection of the Arbitrator and the processing of the grievance shall be outlined in Step Two.

(Doc. No. 18, Ex. B at 12.) This clause, which is described as "Step 3" of the Grievance Procedure, seems to be in conflict with the Agreement's earlier description of the Grievance Procedure, which reads:

> No grievance will be considered and less [sic] submitted to the Company in writing within ten (10) working days from the date of the alleged grievance ....

(*Id.*) Plaintiff notified the Union of his grievance on July 26, 2007. The Union determined that it would not pursue Plaintiff's grievance on August 9, 2007, and notified him of its decision on August 14, 2007. Regardless of whether the ten or five day deadline applies, Plaintiff only states that "there is no indication that the Union fulfilled" its requirement to contact Freeman regarding Plaintiff's grievance. He provides no evidence that the Union actually failed to submit his grievance to Freeman within the timelines of the CBA before the Union made its decision not to pursue the grievance, or that Freeman rejected his grievance as untimely.

Plaintiff has failed to present material facts issues as to whether the Union violated its duty of fair representation. The Court will therefore not reach Plaintiff's breach of contract claim alleged against Defendant Freeman.

## IV. CONCLUSION

For these reasons, Defendants' Motions for Summary Judgment are **GRANTED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 28th day of May, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.

16